## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BOBBY LAMAR STEVERSON,

      Petitioner,

-vs-                                     Case No.  8:03-cv-654-T-27MAP

JAMES V. CROSBY, JR., et al.,

      Respondents.

_____/

### ORDER

Petitioner, a State of Florida inmate, initiated this action *pro se* by filing a Petition for

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2000 convictions

entered by the Tenth Judicial Circuit Court, Polk County, Florida (Dkt. 1 at 2). Respondent

has filed a response to the petition (Dkt. 7) and Petitioner has filed a reply thereto (Dkt. 13).

The matter is now before the Court for consideration of the merits of the petition.

### Background

On April 7, 1994, Petitioner was indicted for first-degree premeditated murder,

armed robbery, and armed burglary with an assault. Represented by counsel, Petitioner

proceeded to a trial by jury on May 26, 1995. The State prosecuted the murder charge

based on the dual theories of premeditated murder and felony murder. Having received

notice of the State's intent to rely on "*Williams* rule"[1] evidence, trial counsel filed a motion

in limine to exclude or limit the collateral crime evidence related to the shooting of a police

---

[1]The *Williams* Rule, codified in Fla. Stat. § 90.404, is substantially similar to Federal Rule of Evidence 404. Under Fla. Stat. § 90.404(2), evidence of other crimes, wrongs, or acts is admissible when relevant as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity. *See Williams v. State*, 110 So.2d 654, 662 (Fla.), *cert. denied*, 361 U.S. 874 (1959) (holding that evidence of other crimes is admissible and relevant if it tends to show a common scheme or plan).

officer that occurred when Petitioner attempted to elude capture.[2] During oral argument, the State asserted that evidence of the shooting was admissible because it was inextricably intertwined with the testimony of other State witnesses and the collateral crime showed a consciousness of guilt. The state trial court denied trial counsel's motion to exclude or limit evidence of the shooting without explanation.

Efforts by trial counsel during the trial to limit or exclude consideration of the extensive evidence presented by the State about the police officer's shooting proved equally unsuccessful. The jury found Petitioner guilty as charged and recommended that he be sentenced to death. The trial court judge followed the jury's recommendation and imposed the death sentence. On direct appeal, the Florida Supreme Court reversed Petitioner's convictions and sentences and ordered a new trial, finding that the state trial court erred in allowing the State to present excessive evidence of the shooting incident. See Steverson v. State, 695 So.2d 687, 690 (Fla.1997).

Represented by counsel, Petitioner proceeded to a second trial by jury on August 2, 1999. On August 13, 1999, the jury found Petitioner guilty of murder in the first degree, robbery with a weapon, and burglary of an occupied dwelling with a weapon. The jury again recommended the death sentence. The trial judge instead imposed concurrent life sentences, to be served consecutive to the sentence imposed following his conviction for attempted second-degree murder of a law enforcement officer (Dkt. 10, Ex. 2; Ex. 3). See Steverson v. State, 677 So.2d 398 (Fla. 2d DCA 1996).

---

[2]The events which occurred during his capture led to Petitioner being charged with the attempted first degree murder of a law enforcement officer. Petitioner was tried for the shooting of Detective Rall prior to his trial in the instant case and convicted of attempted first-degree murder of a law enforcement officer. On appeal, the attempted first-degree murder conviction was reversed and remanded, with directions to the state trial court to reduce the conviction to attempted second-degree murder. Steverson v. State, 677 So.2d 398 (Fla. 2d DCA 1996).

Represented by the public defender's office, Petitioner raised the following issues on direct appeal:

1. Whether [Petitioner's] conviction for first-degree murder must be reversed on the basis of *Mackerley v. State*, 777 So.2d 969 (Fla. 2001), and *Delgado v. State*, 776 So.2d 233 (Fla. 2000);[3]

2. Whether the state trial court erred in allowing excessive testimony regarding the shooting of Detective Rall; and

3. Whether the state trial court erred in denying [Petitioner's] motion to suppress his admissions against interest made to a detention deputy sheriff in a temporary holding cell immediately following [Petitioner's] convictions in his first trial.

Dkt. 10, Ex. 4. Following oral argument, the state district court affirmed Petitioner's first degree murder and armed robbery convictions and sentences but reversed his conviction and sentence for armed burglary with an assault on May 9, 2001. *See Steverson v. State,* 787 So.2d 165 (Fla. 2d DCA 2001). The mandate issued on June 7, 2001 (Dkt. 10, Ex. 8). The Florida Supreme Court denied Petitioner's petition for a writ of certiorari on December 17, 2001. *See Steverson v. State,* 805 So.2d 810 (Fla. 2001) (table decision).

On June 10, 2002, Petitioner filed a petition for state habeas relief alleging that appellate counsel was ineffective for failing to assert that: (1) the evidence was insufficient to support Petitioner's conviction for armed robbery; and (2) the chief judge of the Tenth Judicial Circuit prejudiced Petitioner by reassigning his case from Judge Pyle to Judge Maloney absent grounds for disqualification (Dkt. 10, Ex. 12). The state district court denied the petition on January 31, 2003 (Dkt. 10, Ex. 15). *See Steverson v. State,* 847 So.2d 475

---

[3]Relying on the United States Supreme Court's holding in *Yates v. United States*, 354 U.S. 298 (1957), that a conviction under a general verdict is improper when it rests on multiple bases, one of which is legally inadequate, both *Mackerley* and *Delgado* hold that where a defendant is convicted by a general verdict for first-degree murder on dual theories of premeditation and felony murder, the conviction must be reversed regardless of the sufficiency of the evidence of premeditation where the felony murder charge is legally, as opposed to factually, unsupported. *Mackerley v. State*, 777 So.2d 969 (Fla. 2001); *Delgado v. State,* 776 So.2d 233 (Fla. 2000).

(Fla. 2d DCA 2003) (table decision). Petitioner's motion for rehearing was denied on February 28, 2003 (Dkt. 10, Ex. 18).

Petitioner filed his petition for federal habeas relief on April 3, 2003 (Dkt. 1). Respondent acknowledges that the petition is timely and the claims were raised in state court, but argues that Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e). Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, the Court agrees.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same

deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

### Evidentiary Hearing

The Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. *See Smith v. Singletary*, 170 F3.d 1051, 1053-54 (11th Cir. 1999).  The pertinent facts of the case are fully developed in the record before the Court. *See Cave v. Singletary*, 971 F.2d 1513, 1516 (11th Cir. 1992).  Thus, no additional evidentiary proceedings are required. *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

### Discussion

In his petition, Petitioner raises the following four grounds for relief:

1. Appellate counsel was ineffective in failing to challenge the armed robbery conviction on direct appeal, denying Petitioner his Fifth, Sixth and Fourteenth Amendment rights;

2. Reversal for a new trial is required because the state trial court erred in allowing irrelevant and prejudicial collateral crimes testimony and details, in violation of Petitioner's Fifth and Fourteenth Amendment rights;

3. The state trial court erred in allowing testimony regarding statements taken in violation of *Miranda*, violating Petitioner's Fifth, Sixth and Fourteenth Amendment rights; and

4. Appellate counsel was ineffective for failing to challenge the issues related to Judge Maloney presiding over Petitioner's trial.

Dkt. 1. Grounds One and Four were raised in Petitioner's state habeas petition and Grounds Two and Three were raised on direct appeal.

## GROUNDS ONE AND FOUR

Because Grounds One and Four assert claims of ineffective assistance of appellate counsel, they will be discussed together. Petitioner contends that appellate counsel was ineffective in failing to challenge the armed robbery conviction (Ground One) and the reassignment of his case to the judge who presided over his first trial (Ground Four).

Generally, to establish a prima facie claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Eleventh Circuit has held that "[w]hen applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

The standard of proof and review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. *Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992). In this case, Petitioner must first show that his appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259 (2000). However, appellate counsel who files a merits brief need not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). The exercise of judgment involved in framing an appeal

makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith v. Robbins*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")).

To demonstrate prejudice, Petitioner must establish that it was reasonably probable that, but for counsel's error, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 286. Petitioner must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel. *Id.* at 289.

Although the state district court rejected Petitioner's habeas petition without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d at 1255. Thus, to prevail on his request for federal habeas relief, Petitioner must demonstrate that in reaching its decision rejecting his claims, the state district court (1) unreasonably applied *Strickland's* two prong test to the facts of his case; (2) unreasonably extended the scope of *Strickland* to a new context where it should not apply; or (3) unreasonably refused to extend that principle to a new context where it should apply. *See* 28 U.S.C. § 2254(d). The "unreasonable application" inquiry requires the court to determine whether the application was objectively unreasonable. *Penry*, 532 U.S. at 792; *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

**Armed Robbery**

In Ground One, Petitioner contends that his right to effective assistance of counsel was violated when appellate counsel failed to argue that the State did not establish the

"*corpus delicti*" for the armed robbery conviction. This issue was preserved at trial when trial counsel moved, albeit unsuccessfully, for a judgment of acquittal on the ground that the State failed to establish the *corpus delicti* of armed robbery and burglary (Dkt. 10, Ex. 19). Trial counsel listed the motion for judgment of acquittal as an issue in the Notice of Judicial Acts to be Reviewed on appeal. Appellate counsel was successful in having the armed burglary conviction vacated, *see Steverson v. State*, 787 So. 2d 165 (Fla. 2d DCA 2001), but failed to argue that the state trial court erred in denying the motion for judgment of acquittal on the armed robbery charge.

The purpose of the *corpus delicti* rule[4] is to prevent a person from "be[ing] convicted out of derangement, mistake or official fabrication." *Burks v. State*, 613 So.2d 441, 443 (Fla. 1993) (citation omitted). Sufficient evidence of *corpus delicti* is not only a predicate to the admission of a confession, *see State v. Allen*, 335 So.2d 823 (Fla. 1976), but is, as well, a *sine qua non* of conviction. Under Florida law, the *corpus delicti* doctrine requires that before a confession can be introduced into evidence, the State must show: (1) that the injury or harm constituting the crime occurred; and (2) that the injury or harm was occasioned by criminal conduct. *Id*. In Florida courts, *corpus delicti* can be established by circumstantial evidence and such evidence need not be uncontradicted or overwhelming. *Burks v. State*, 613 So.2d at 443 (citation omitted).

Under the facts of this case, the State was required to show that the victim's (1) property was taken (2) with the intent to either permanently or temporarily deprive him of

---

[4]As a creature of state law, the *corpus delicti* rule does not carry with it implications of a violation of federal constitutional law. Whether the prosecution satisfied the *corpus delicti* doctrine as it is applied in Florida is solely a state law issue. While issues of pure state law are generally not cognizable in a federal habeas corpus action, *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983), in the instant case, the *corpus delicti* rule is the basis for Petitioner's ineffective assistance of counsel claim.

the property and that the taking was effected by (3) the use of force, violence, assault, or putting the victim in fear. Fla. Stat. § 812.13 (1994).

The State introduced evidence that the victim owned both a color television and a video cassette recorder (VCR), both of which were in the victim's home the day the murder occurred (Dkt. 10, Ex. 26, Vol. IX at Tr. 1158-1159, 1194-1195, 1205-1206, 1208-1209, 1213, 1229, 1231, 1243). When the crime scene investigators arrived at the scene, the television and VCR were missing (Dkt. 10, Ex. 26, Vol. VIII at Tr. 960-961, 999-1000; Vol. IX at Tr. 1158-1159, 1194-1195, 1205-1206, 1208-1209, 1213, 1229, 1231, 1243). The State adduced testimony that the victim was not physically able to lift or carry the items from his home because he was afflicted with crippling arthritis (Dkt. 10, Ex. 26, Vol. IX at Tr. 1158-1159, 1194-1195, 1205-1206, 1208-1209, 1213, 1229, 1231, 1243).

Three witnesses testified that Petitioner's blue Honda was parked outside the victim's trailer at or about the time the victim was attacked (Dkt. 10, Ex. 26, Vol. X at Tr. 1443, 1458-1461, 1463-1467; Vol. XI at Tr. 1478, 1487, 1497-1504, 1507, 1511, 1516, 1519-1522, 1525, 1541, 1543, 1645, 1648-1649, 1652-1653, 1660; Vol. XII at Tr. 1709, 1716-1718, 1720-1721).

Witness Brenda Howle testified that she arrived at the victim's trailer around midnight. She further testified that she recognized the car parked in front of the victim's trailer when she arrived as belonging to Petitioner. According to Ms. Howle, when she knocked on the door, someone other than the victim called out "bitch, get away before you get hurt" (Dkt. 10, Ex. 26, Vol. X at Tr. 1461). She heard what sounded like a scuffle or wrestling going on inside the trailer and demanded that she be let inside. The person inside responded "bitch, get away from here." *Id.* According to Ms. Howle, although she knew "something just wasn't right," she left and did not report the incident to police. *Id.* at 1462.

Ms. Howle further testified that when she walked past Petitioner's car, she saw a television and VCR in the back of his vehicle (Dkt. 10, Ex. 26, Vol. X at Tr. 1443, 1458-1461, 1463-1467; Vol. XI at Tr. 1478).

The evidence established that the victim was found bound to a chair by his hands and feet, with tape over his mouth, nose, and eyes and a bag placed over his head. A cord that had been used in an attempt to strangle the victim was around his neck, and he had been stabbed repeatedly in the chest and back. The stab wounds were determined to be the cause of death (Dkt. 10, Ex. 26, Vol. VIII at Tr. 960, 1003-1005). While the evidence of the victim being placed in fear was not direct, the jury could easily infer that under the circumstances, the victim was placed in fear (Dkt. 10, Ex. 26, Vol. XII at Tr. 1709, 1716-1718, 1720-1723). *See Baker v. State*, 760 So. 2d 1085 (Fla. 5th DCA 2000) (fear can be inferred).

The State then presented testimony by three of Petitioner's acquaintances that he had confessed to each of them that he committed the robbery and murder (Dkt. 10, Ex. 26, Vol. XI at Tr. 1645, 1648-1649, 1652-1653, 1660; Vol. XII at Tr. 1709, 1716-1718, 1720-1723, 1749, 1766-1776, 1781). To satisfy the *corpus delicti* rule, the State need only present some independent evidence that "tends to show" that the offense in question has been committed. *See Chavez v. State*, 832 So.2d 730, 762 (Fla. 2002), *cert. denied*, 539 U.S. 947 (2003) (citing *Frazier v. State*, 107 So.2d 16, 26 (Fla. 1958). As the Florida Supreme Court recognized in *Allen*, "[t]he state's burden of proof 'beyond a reasonable doubt' is a requirement to establish the defendant's guilt, not to authorize admission of his confession." 335 So.2d at 825. The Court finds that the State presented sufficient evidence to establish, independent of Petitioner's extra-judicial statements, that the crime of robbery likely had been committed.

-10-

Appellate counsel is not ineffective for failing to raise claims on appeal that lack merit or for separating the stronger issues from the weaker in order to keep the appellate court's attention focused. *Jones v. Barnes*, 463 U.S. at 751-52. Declining to "promulgate[] a *per se* rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed," the *Jones* court held that there is no constitutional right to compel appointed counsel to press nonfrivolous points requested by the client "if counsel, as a matter of professional judgment, decides not to present those points." *Id.* at 751. Appellate counsel's decision not to challenge the armed robbery conviction on the ground that the State violated the *corpus delicti* rule was consistent with reasonable appellate strategy that, under the deferential standard of review articulated in *Strickland*, should not be second-guessed. *Strickland*, 466 U.S. at 689.

The Court determines that Petitioner has not shown that the state court's rejection of this claim resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254.

**Recusal**

In Ground Four, Petitioner complains that appellate counsel was ineffective in failing to raise the reassignment of Petitioner's case to Judge Maloney as a ground for relief. Petitioner contends that Judge Maloney was prejudiced against him and predisposed to sentence him harshly. This claim was raised and rejected in Petitioner's state habeas proceeding. Respondent contends that Petitioner is not entitled to relief on this ground because he has not demonstrated that appellate counsel's decision not to raise this issue amounted to deficient performance or prejudiced Petitioner.

When the Florida Supreme Court reversed Petitioner's convictions on June 12, 1997, the case was remanded for retrial. On September 3, 1997, the State filed a motion requesting that Judge Maloney be assigned to preside over the new trial. As Petitioner acknowledges in his petition, Judge Maloney was not assigned to the criminal division when the State filed its first motion to reassign the case. The motion was denied, and Judge Pyle was assigned to the case.

When Judge Pyle became ill, Judge McDonald was assigned to handle the case until Judge Pyle recuperated. Two years later, Judge Maloney's rotation back to the criminal division was set for July 1, 1999. With the second trial scheduled to commence on August 2, 1999, the State renewed its motion to have the case assigned to Judge Maloney for retrial (Dkt. 10, Ex. 24). This time, the motion was granted. The Court finds, given the change in circumstances, that the chief judge did not abuse his discretion in granting the State's motion to reassign the case to Judge Maloney.[5]

To the extent that Petition asserts that appellate counsel should have argued that Judge Maloney erred in refusing to recuse himself, this argument also fails. While there is nothing in the record that indicates trial counsel raised an objection to the reassignment of the case pretrial, on the morning the trial commenced, Petitioner objected, *pro se*, to Judge Maloney presiding at the trial.

---

[5]Judge Maloney had presided over the five-day trial in the companion case charging Petitioner with attempted first degree murder of Detective Rall, who Petitioner shot while attempting to elude capture for his primary offense, the murder in this case. *Steverson v. State*, 677 So. 2d 398 (Fla. 2d DCA 1996). Thus, Judge Maloney was well versed in the facts underlying the present case. Beginning on May 26, 1995, Judge Maloney presided over Petitioner's 12-day trial which culminated in a verdict of guilty, and the 2-day sentencing phase that culminated in the jury recommendation of death. Absent some extrajudicial act not present in the record, the Court agrees with Respondent that given Judge Maloney's pending return to the felony division, the interests of judicial economy were best served by transferring the case to him. *See Shoffner v. Shoffner*, 744 So. 2d 1157 (Fla. 1st DCA 1999).

Petitioner:     Also due to your statements in my last trial, that society will never be safe as long as I continue to live, I now ask you to recuse yourself for presiding over this trial. I have written a letter to this effect [to] the chief Judge Curry. I understand that Judge McDonald was available to handle this trial, and I move that he be allowed to. I don't see how with your last statements towards me and about me that were not even called for, they were a separate paragraph, society would never be safe as long as I continue to live, you can be a fair judge over this trial. You obviously have personal bias towards me, and I ask that you just let Judge McDonald come in and try the trial. Thank You.

Court:     Yes, sir. The motion for recusal is denied.

Regarding the conviction on the attempted murder of a law enforcement officer, I was of the impression that the Second District Court of Appeal had rendered an opinion in that matter, and they had reduced the conviction from Attempted Murder One to attempted murder . . . .

Dkt. 10, Ex. 25 at Tr. 8. It appears that Petitioner was attempting to tailor his motion to Fla. R. Jud. Admin. 2.160(d)(1) ("A motion to disqualify shall show: (1) that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge"). In an attempt to preserve the issue, trial counsel adopted Petitioner's *pro se* motion:

Trial counsel:     I'm just going to renew all the motions that have been filed, heard and denied including this one.

Court:     Yes sir, thank you. Same ruling on the renewal of the motions.

We'll be in recess until we get a venire.

(Recess)

Trial counsel:     I think there's some case law that says that a defendant cannot make a motion while they are represented by counsel. I just want to make sure I'm going to go ahead and for the record and to preserve the record also submit to the Court the motion submitted by Mr. Steverson, mainly the motion to recuse.

Court:     Thank you. Same ruling. Bring them in.

Dkt. 10, Ex. 26, Vol. VII at Tr. 15-16.

First, as Respondent correctly points out, under Fla. R. Jud. Admin. 2.160, when a ground for disqualification is known before trial, a motion to disqualify a trial judge must be made in a sworn writing "alleg[ing] specifically the facts and reasons upon which the movant relies as the grounds for disqualification." The rule further provides that:

> A motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling. Any motion for disqualification made during a hearing or trial must be based on facts discovered during the hearing or trial and may be stated on the record, provided that it is also promptly reduced to writing in compliance with subdivision (c) and promptly filed.

Fla. R. Jud. Admin. 2.160(e). Petitioner does not allege that he was not aware that his case had been reassigned to Judge Maloney until the trial commenced. Assuming, in arguendo, that he did not have this information until he appeared in the courtroom, Florida's rule governing disqualification of a trial court judge required that the oral motion to recuse be "reduced to writing" under oath, accompanied by the attorney's certificate of good faith, renders the oral motion insufficient. The writing requirement cannot be waived. *See Rogers v. State*, 630 So.2d 513, 516 (Fla. 1993). Appellate counsel cannot be deemed ineffective for failing to raise an issue not preserved for review. *Johnson v. Singletary*, 695 So. 2d 263, 266-67 (Fla. 1996).

Moreover, the Florida Supreme Court has held that a legally sufficient motion to disqualify must demonstrate "some actual bias or prejudice so as to create a reasonable fear that a fair trial cannot be had." *Downs v. Moore*, 801 So.2d 906, 915 (Fla. 2001) (quoting *Dragovich v. State*, 492 So.2d 350, 353 (Fla. 1986)). It is well-established that mere allegations of prior adverse rulings are legally insufficient to mandate disqualification. *See Suarez v. State*, 115 So. 519 (Fla. 1928). *See also Hope v. State*, 449 So.2d 1315

-14-

(Fla. 2d DCA 1984) (finding that the fact that the judge found the defendant guilty of civil contempt was legally insufficient to disqualify the judge from adjudication of a criminal contempt charge against the defendant). *See also Christo v. Padgett*, 223 F.3d 1324, 1334 (11th Cir. 2000) (quoting *Hamm v. Members of the Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983) (finding "[n]either a trial judge's comments on the lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias.").

Petitioner's assertion that the trial judge harbored "known prejudice" against him is vague and conclusory. Likewise, Petitioner's bare assertion that "Judge Maloney is prejudiced against Petitioner as should be evident by his unconstitutional rulings in this trial and the previous trial," devoid of any factual support, is insufficient to support finding that Judge Maloney harbored "actual bias or prejudice" toward Petitioner.  Nothing in the record supports Petitioner's claim that appellate counsel was ineffective for failing to assert that Judge Maloney prevented Petitioner from receiving a fair trial.

Finally, Petitioner's contention that Judge Maloney was predisposed to sentence him "harshly" is refuted by the record. The jury found Petitioner guilty and recommended that the trial court impose a death sentence.  Judge Maloney instead imposed concurrent life sentences on proportionality grounds.

The Court determines that appellate counsel's decision not to raise Petitioner's unpreserved and legally insufficient recusal motion as grounds for appeal was reasonable under prevailing professional norms. Having failed to meet *Strickland*'s two-prong test, Petitioner has not demonstrated a viable ineffective assistance of counsel claim.

Petitioner has failed to establish that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). This ground, therefore, lacks merit.

**GROUND TWO**

In Ground Two, Petitioner alleges that the state trial court erred in allowing the presentation of testimony regarding the shooting of Detective Rall. Respondent acknowledges that this ground was raised on direct appeal, but asserts that Petitioner is not entitled to relief because the claim does not rise to the level of a federal constitutional violation.  A review of Petitioner's appellate brief reveals that when he presented this claim in state court, he failed to present the federal aspects of the claim.

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004). *See also Henderson v. Campbell*, 353 F.3d at 891. Ground Two was presented to the state courts only as a matter of state law. *See* Dkt. 10, Ex. 4 at 30-42.

In support of his contention in the appellate brief that the admission of testimony regarding the shooting of Detective Rall required reversal of his conviction, Petitioner argued that the "error cannot be deemed harmless beyond a reasonable doubt." As legal authority for this argument, Petitioner cited *State v. DiGuillio*, 491 So.2d 1129 (Fla. 1986), which adopted the harmless error standard enunciated by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18 (1967). *See* Dkt. 10, Ex. 4 at 40.  *Chapman* is the only federal case cited in support of this claim in Petitioner's appellate brief.  Other than the conclusory statement Petitioner made in the closing sentence of his 12-page argument on this issue that "a new trial is mandated, as [he] was denied a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 9 and 16 of the Florida Constitution" (Dkt. 10,

Ex. 4 at 40), Petitioner's entire argument is based on state law (Dkt. 10, Ex. 4 at 30-42). *See Baldwin v. Reese*, 541 U.S. at 33.

Supreme Court precedents clearly hold that a petitioner must present to the state courts both the operative facts and legal principles that he presents to the federal courts in order to meet the requirement that the state courts be given a fair opportunity to rule on the federal claims raised in a federal habeas proceeding. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). The state courts must be alerted to the fact that the prisoner is asserting claims under the United States Constitution. *Duncan v. Henry,* 513 U.S. 364, 365-66 (1995); *see also, Isaacs v. Head,* 300 F.3d 1232, 1254 (11th Cir. 2002). Merely presenting the facts in state court necessary to support the federal claim or a somewhat similar state law claim is not sufficient to satisfy the exhaustion requirement. *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (citations omitted). The petitioner must also articulate the constitutional theory serving as the basis for his claim for relief. *Henry v. Dept. of Corr.,* 197 F.3d 1361, 1366 (11th Cir.1999) (quoting *Gray v. Netherland,* 518 U.S. 152, 153 (1996)). *See also Baldwin v. Reese*, 541 U.S. 27, 31 (2004). Petitioner fails to meet this burden in Ground Two.

A petitioner's claims or portions of claims which are not exhausted but would clearly be barred if returned to state court must be dismissed.[6] *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here it would be futile to dismiss this case to give Petitioner the opportunity to exhaust the federal dimensions of this claim because it could have and should have been raised on direct appeal. *See* Fla. R. Crim.P. 3.850(g).[7] Because

---

[6] *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

[7] Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. (continued...)

Petitioner did not present his constitutional claim to the state court, it has not been properly exhausted and is now procedurally barred in state court.

Therefore, unless Petitioner can show either cause and prejudice or that the actual innocence exception applies to this claim, it is procedurally defaulted in this Court. *See, e.g., Coleman v. Thompson,* 501 U.S. at 735 n.1 (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes). Cause must ordinarily be something external to the defense. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir.1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152 (1982).

Petitioner offers no reason for his failure to raise this claim in a federal context, and the Court discerns none that would amount to good cause to overcome his default. Having failed to allege, much less show, that any factors external to the defense prevented the presentation of the federal dimension of this claim in state court, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. 72 (1977).

An exception to the "cause-and-prejudice" requirement was recognized in *Sykes*. Habeas relief would not be barred for a victim of a "miscarriage of justice," referred to as the "actual innocence" exception. *Id*. at 90. A petitioner in a collateral proceeding who

---

[7](...continued)
1994), *cert. denied*, 513 U.S. 1185 (1995).

wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations omitted); *see also Schulp v. Delo*, 513 U.S. 298, 316 (1995). In this context, petitioner must demonstrate that he has newly discovered evidence that if presented at trial would establish factual innocence rather than mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner does not present any evidence of "factual" innocence that was not available at trial. Without such a showing, Petitioner cannot demonstrate a colorable claim of actual innocence. *Id.*

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of the claim raised in Ground Two.[8] *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**Ground Three**

Petitioner next asserts that the state trial court erred in allowing the admission of testimony about statements and admissions he made to Polk County Detention Deputies Gainer shortly after the jury returned a guilty verdict in his first trial. Petitioner contends that the statements and admissions were procured in violation of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). In his reply to the response, Petitioner expands

---

[8]Even if this claim were not procedurally barred, the Court would be precluded from granting Petitioner the relief he seeks. Under Florida law, evidence of a suspect's flight after seeing the police is probative of his consciousness of guilt. *Fenelon v. State*, 594 So.2d 292, 294 (Fla. 1992). Petitioner's flight was a "material fact" within the meaning of Fla. R. Evid. 90.608(5) because it was circumstantial evidence that he committed the murder, the matter placed in issue by the charging document. *See Ehrhardt,* Florida Evidence § 401.1 (1995 ed.).

the scope of his claim by arguing, as did appellate counsel, that his Sixth Amendment right to counsel was violated when Deputy Gainer spoke with him.

Petitioner does not deny making the statements about which he now complains. He was "in custody" when the statements were made and the statements were made to "law enforcement officers." While there are no allegations in the petition that Petitioner was "coerced" into making the statements or assertions that the statements were not made voluntarily, in his reply Petitioner, relying on the holding in *Brewer v. Williams*, 430 U.S. 387, 398 (1977), asserts that Deputy Gainer coerced him into making the statements by interjecting religion into the conversation.

As the date for Petitioner's second trial approached, trial counsel filed a motion to suppress inculpatory statements Petitioner made to Deputies Gainer, Baldwin, and McGarvey (Dkt. 10, Ex. 19). A hearing on the motion was held on July 29, 1999 (Dkt. 10, Ex. 20). After hearing the testimony of the three deputies and argument by counsel, the state trial court took the matter under advisement. On August 5, 1999, it entered a written order denying the motion to suppress:

> Defendant seeks to suppress statements made by him to Detention Deputy Eugene Gainer and Detention Deputy James McGarvey after the jury rendered a guilty verdict in the original trial of this case on May 26, 1995. Defendant argues that his statements were involuntarily made and that he was improperly questioned after counsel had been appointed in violation of the Fifth, Sixth, and Fourteenth Amendments. For reasons stated in *Christmas v. State*, 632 So.2d 1368 (Fla. 1994) and *Davis v. State*, 698 So.2d 1182 (Fla. 1997), the court finds that the testimonies of Detention Deputy Gainer and Detention Deputy McGarvey regarding the statements made by Defendant subsequent to his conviction are admissible.
>
> Detention Deputy Gainer was working in the holding cells adjacent to the courtrooms in the courthouse. He did not know Steverson and did not know that he was on trial for murder. Immediately after the jury found Steverson guilty of murder, Deputy Gainer noticed him standing alone in a cell staring out with a strange look on his face. Gainer asked Steverson what was wrong. This innocuous question prompted Steverson to respond "I did what they

-20-

> said I did." After Steverson had been transported from the courthouse to the jail, Detention Deputy McGarvey was told to escort Steverson to the suicide watch cell. Deputy McGarvey knew Steverson from his pretrial detention in the jail but he did not know why Steverson was in jail and he did not know that Steverson had just been convicted of murder. Steverson had never shown any signs of being suicidal and Deputy McGarvey, curious to know why he was being placed in the suicide watch cell, asked Steverson what was wrong. Steverson again made incriminating statements. The court concludes that neither express questioning of the defendant nor its functional equivalent took place when these generic inquiries were made. There has been no showing that the deputies' statements were intended to, or reasonably likely to elicit incriminating responses. "Interrogation takes place . . . when a person is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response." *Traylor v. State*, 596 So.2d 957 at 966 n. 17.

Dkt. 10, Ex. 21.

After Deputies Gainer and Baldwin testified at trial, trial counsel moved for a mistrial,

arguing that "in order to prevent directing significant amounts of attention to the prior trial,

defense could not fully attack or establish why [Petitioner] gave the statement[s]" or

challenge the reliability of the detention deputies' testimony about the statements (Dkt. 10,

Ex. 26, Vol. VIII at Tr. 1892-93). The state trial court denied the motion, stating:

> On the question of Detention Deputy Gainer and Detention Deputy Baldwin, I've entered a written order stating that in my opinion this was not an interrogation by law enforcement and no *Miranda* warnings were necessary.
>
> In the event that that ruling is determined to be incorrect, I'm making a further finding that the statements made by the defendant to Detention Deputy Gainer were freely and voluntarily given.

*Id.* at Tr. 1893-94.

This claim was also raised by Petitioner on direct appeal. In rejecting the claim, the

state district court held:

> Steverson's final issue relates to the statements and admissions made to Detention Deputy Gainer while Steverson was in his holding cell after his

convictions in his first trial. We also find this issue to be without merit. Gainer worked at the temporary courthouse in Bartow in May 1995, at the time of Steverson's first two-week trial. Gainer was responsible for feeding the inmates. After the verdict in the 1995 trial, Gainer saw Steverson standing at the door of his holding cell. Gainer testified that he did not know who Steverson was, had no prior conversations with Steverson, and although Gainer knew there was a murder trial going on, he had no knowledge that Steverson was the person charged with murder.

Steverson was alone in the cell and standing at the glass window of the door of the cell, just staring. Gainer thought Steverson may not have eaten so he approached and asked if he had been fed. Steverson responded affirmatively. Gainer then said, "Well, what's the matter?" or "Well, what's wrong? I mean you seem like you want something." Steverson responded, "I did what they said I did." Gainer asked, "What did you do?" Referring to his later written report, Gainer testified as to the details of what Steverson told him. He stated that he had a conversation with Steverson about a killing incident and that Steverson stated that he stabbed someone after drinking and getting high. The victim asked Steverson to pawn his TV and VCR for drugs, which he did. When he returned, the victim demanded the pawn ticket or the money, but Steverson told him he had spent the money on more drugs. The victim said he wanted the TV back or he was going to call the police. Steverson said he panicked and stabbed the victim because he did not want to go to jail. He did not say what type of weapon he used. Steverson told Gainer that he tied the victim up in a chair and put a bag or something over his head. The man kept moving so he kept stabbing him. He was so high he did not know what he was doing. Gainer thought Steverson seemed remorseful. Gainer said it was possible he discussed God and salvation with Steverson.

Gainer did not read Steverson *Miranda* rights. He was fairly new at the time, and commonly talked to inmates in the holding cells. Gainer testified that he did not encourage Steverson to speak about the details of the crime. However, he watched and observed for the security of inmates and whether they might be suicidal. Deputy Gainer testified that he preaches the "Word of the Lord" any opportunity he has to inmates or others, and he did so here. If Steverson said something that Gainer did not know anything about, Gainer would ask "What do you mean?" Gainer did not attempt to stop Steverson from speaking, and Steverson seemed to speak freely. The conversation lasted roughly ten to fifteen minutes.

The court denied the motion to suppress. The judge ruled there was no improper interrogation by law enforcement and that the statements made by Steverson to Deputy Gainer were freely and voluntarily given. We agree.

*Steverson v. State*,  787 So.2d 165, 168-169 (Fla. 2d DCA 2001). Clearly, Petitioner was afforded a full and fair opportunity to develop the factual basis for this claim before the state courts, *see id*. and Dkt. 10, Ex. 020.

The state courts applied the correct standard of review for the admissibility of evidence related to statements made by a defendant to a law enforcement officer, as enunciated by the Supreme Court. *Miranda*, 384 U.S. at 469-73.  Thus, to establish that he is entitled to relief on these claims, Petitioner must establish that the state trial court incorrectly applied this standard in reaching its determination that his statements to Deputy Gainer were admissible evidence.

In *Miranda*, the Supreme Court held that evidence obtained as a result of a *custodial interrogation* is inadmissible as having been obtained in violation of the Fifth Amendment unless the defendant was first advised of his right to have counsel present, his right to remain silent and if he gave up those rights, anything he said could be used against him. *Miranda*, 384 U.S. at 469-73.  The concern which led to the *Miranda* opinion was that the "interrogation environment" created by the interplay of interrogation and custody would subjugate the individual to the will of his examiner, undermining the privilege against compulsory self-incrimination.

In both Federal and Florida courts, the special procedural safeguards outlined in *Miranda* are triggered only where a suspect in custody is subjected to *interrogation*. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *Davis v. State*, 698 So.2d 1182 (Fla. 1997), *cert. denied*, 522 U.S. 1127 (1998). If either custody or interrogation is absent, *Miranda* warnings are not required. The protections of *Miranda* do not extend to voluntary statements a defendant may make to law enforcement officers. *Miranda*, 384 U.S. at 478.

The Supreme Court has clarified that "'[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. at 300. Under *Miranda*, the term "interrogation" refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id*. at 301. The Supreme Court has repeatedly pointed out, however, that "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301-02 (emphasis in original).

As the Florida Supreme Court recognized in *Everett v. State*, "[t]he police are not forbidden all contact with a defendant in custody; in fact, the [*Innis*] Court expressly exempted from the definition of 'interrogation' routine police contact 'normally attendant to arrest and custody.'" 893 So.2d 1278, 1285 (Fla. 2004) (citation omitted). *See also Rhode Island v. Innis*, 446 U.S. at 300-01 ("The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.").

In the present case, it boils down to whether, in the context of the brief conversations Deputy Gainer had with Petitioner, he should have known that Petitioner would suddenly be moved to make a self-incriminating response. The facts surrounding Petitioner's conversations with the detention deputies are largely undisputed. The factual

-24-

finding by the state trial court that Petitioner was not subjected to "improper interrogation" is supported by the record. *See* Dkt. 10, Ex. 21; *Steverson v. State*, 787 So.2d at 168-69. Petitioner has not overcome by clear and convincing evidence the presumption of correctness accorded the state court's findings of fact. 28 U.S.C. §2254(e)(1).

Given the nature of Detective Gainer's questions, Petitioner's inculpatory statements were not the product of a *Miranda* violation. To the contrary, as the state trial court found, it appears that Petitioner spoke at will. Voluntary statements are not subject to *Miranda*'s exclusionary rule.

The Court determines that the state trial court's conclusion that Petitioner's statements were not the result of custodial interrogation and thus *Miranda* warnings were not required was not unreasonable based on the record evidence, nor was it an unreasonable application of *Miranda* and its progeny. Accordingly, Petitioner's statements were properly admitted into evidence at trial. The state court's ruling did not result in a decision that was contrary to, or an unreasonable application of, United States Supreme Court precedent.

**Right to Counsel**

As discussed above, in his reply to the response, Petitioner expanded the scope of his claim that the trial court erred in denying his motion to suppress statements made to Deputy Gainer by arguing that his Sixth Amendment right to counsel was violated when Deputy Gainer spoke with him in the holding cell. This claim was, however, argued before the trial court and raised by Petitioner on direct appeal.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend.

VI.   Once the right attaches, law enforcement officials may not use any "deliberately elicited" and incriminating statements a defendant makes without the presence or waiver of counsel. *See Brewer v. Willliams*, 430 U.S. 387, 398 (1977). The Florida Supreme Court has likewise applied the "deliberately elicited" test in determining whether a defendant's incriminatory statements should be excluded where the statements were made after judicial proceedings had been initiated and in the absence of a valid waiver of the right to have counsel present. *Rolling v. State*, 695 So.2d 278, 290 (Fla. 1997).

There can be no doubt that the right to counsel had attached given that the events of which Petitioner complains occurred after the jury returned a guilty verdict. The issue here is whether Deputy Gainer "deliberately and designedly set out to elicit information" from Petitioner, *see Brewer,* 430 U.S. at 399.[9] Having held an evidentiary hearing during which it heard testimony from three detention deputies, the state trial court found that there was "no showing that the deputies' statements were intended to, or reasonably likely to elicit incriminating responses" (Dkt. 10, Ex. 21). The transcript of the hearing on Petitioner's motion to suppress supports the trial court's finding. *See* Dkt. 10, Ex. 20. Petitioner fails to point to clear and convincing evidence that rebuts the presumption of correctness accorded the state trial court's finding (Dkt. 10, Ex. 21).

---

[9] Williams, who had recently escaped from a mental hospital, abducted a 10-year-old girl in Des Moines, Iowa. After his arrest in Davenport, Iowa, Williams retained counsel in both locations. Both attorneys told Williams not to speak with officials until he consulted with his counsel in Des Moines. Officials agreed not to question Williams while transporting him between cities. En route from Davenport to Des Moines, the officers appealed to Williams's "well-known, devout religious beliefs" and asked him to locate the body so that the victim's family could give her a "Christian burial." *Brewer*, 430 U.S. at 393. Williams directed the police to the victim's body and he was indicted for murder. The Supreme Court held that the officers "deliberately and designedly set out to elicit information from [ Williams] . . . [because they] purposely sought during [ Williams's] isolation from his lawyers to obtain as much incriminating information as possible." *Id.* at 399.

Petitioner's attempt to analogize this case to *Brewer* is unpersuasive. As the *Brewer* court held, a defendant "has a right to legal representation when the government interrogates him." *Brewer v. Williams*, 430 U.S. at 401. A state court's finding that no express interrogation occurred in the sense that no questions were asked is a factual finding entitled to § 2254(e) presumption of correctness. What circumstances surrounded the exchange between Deputy Gainer and Petitioner is distinctly factual and state court findings in response to that inquiry are entitled to a strong presumption of correctness under § 2254(e). Nothing in the record suggests that Petitioner, like Williams, suffered from any infirmity, mental or physical, which rendered him vulnerable to Deputy Gainer's references to God. *See Brewer v. Williams*, 430 U.S. at 390. Nor does Petitioner profess to have deeply held religious beliefs about which Deputy Gainer knew that motivated him to use the "Word of the Lord" as a tool to coerce Petitioner into making incriminating statements.

Petitioner fails to point to clear and convincing evidence which rebuts the presumption of correctness accorded the state trial court's finding that Petitioner failed to demonstrate that the "deputies' statements were intended to, or reasonably likely to elicit incriminating responses" (Dkt. 10, Ex. 21). Giving deference to the state trial court's findings of fact, the Court finds that Petitioner has failed to establish that the trial court erred in denying his motion to suppress.

Petitioner has failed to demonstrate that the state courts' decisions are contrary to or an unreasonable application of clearly established Supreme Court law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. 2254(d). Petitioner has not established that he is entitled to relief on this claim.

-27-

### Conclusion

For the foregoing reasons, Petitioner is not entitled to relief under 28 U.S.C. § 2254.

Upon consideration, it is **ORDERED AND ADJUDGED**:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on _____June 5th_____, 2006.

JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

SA:jsh
Copy to: Petitioner/Counsel of Record